## UNIVERSAL FORM CLAMP CO. v. TAXIS et al.

(Circuit Court of Appeals, Seventh Circuit. April 27, 1920. Rehearing Denied June 5, 1920.)

No. 2756.

1. **Patents ☞314—Defendant's failure to introduce evidence does not give patent standing of pioneer.**

   Though defendant, charged with infringement, failed to introduce evidence, that fact does not give the patent the standing of a pioneer patent; for, if that were true, a motion to dismiss a bill for invalidity of the patent could never be sustained.

2. **Evidence ☞5 (2)—Judicial notice of well known facts in patent cases.**

   The courts take judicial notice of common and well-known facts in patent cases, as well as other litigation, and in construing a patent in an old field, such as that of the reinforcement of concrete, will consider matters of common knowledge.

3. **Patents ☞328—888,671, for concrete floor construction, held not infringed.**

   Patent No. 888,671, for a concrete floor construction, which consisted of a method for regulating and spacing the reinforcing material, etc., *held,* in view of the prior art, by which it must be limited, not infringed.

4. **Evidence ☞265 (2)—Admission that prior device infringed not available in subsequent suit.**

   Though defendant admitted that a prior device infringed complainant's patent for concrete floor construction, complainant cannot in a subsequent suit recover on the theory that defendant's last device was a mechanical equivalent of the first, for such use of the admission is improper, as it would allow the measuring of complainant's rights by the admission, instead of by the patent.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Frederick C. Taxis and others against the Universal Form Clamp Company. From a decree for complainants, defendant appeals. Reversed, with direction to dismiss the bill.

Certiorari denied 254 U. S. ——, 41 Sup. Ct. 14, 65 L. Ed. ——.

William R. Rummler and Cyrus W. Rice, both of Chicago, Ill., for appellant.

George Bayard Jones, of Chicago, Ill., for appellees.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVANS, Circuit Judge. From a decree sustaining patent No. 888,671 to Frederick C. Taxis, on "a concrete floor construction," appellant prosecutes this appeal, relying upon its defense of noninfringement. Describing the object of his invention, patentee says:

" * * * To introduce into a concrete floor construction a structural detail, which shall not only serve to properly space and tie the metallic reinforcing and supporting bars for the concrete, but shall at the same time serve as a gage for the construction of the boxing into which the cement composition is poured around the bars previously spaced and positioned. With my improvement any shifting of the reinforcing members from the positions they are intended to occupy is impossible, a thorough tying therefore is insured, and a uniform construction can always be depended on."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Claims 1 and 2 read as follows:

"1. In combination with a reinforcing member of a concrete floor, a tie member or strip having pairs of openings, anchor pieces composed of pieces of metal bent into a U-shaped form and passed with their arms through said openings, means for limiting the depth of insertion of the arms whereby a portion of the anchor piece is left projecting below the tie member and forming a gage or leg, the free ends of the arms being bent around the reinforcing member, substantially as set forth.

"2. In combination with a reinforcing member of a concrete floor, a tie member or strip having pairs of openings, anchor pieces composed of single pieces of metal bent into a U-shaped form, and terminating in reduced arms passed through the openings aforesaid, said arms being bent around the reinforcing member, and shoulders formed between the arms and body of the anchor for limiting the depth of insertion of the arms into the openings of the tie member, the portion projecting below the latter serving as a gage or leg for bearing against the roof of the boxing over which the concrete is poured, substantially as set forth."

Figures 5 and 6 herewith submitted illustrate the invention.

*1* is the tie strip, containing pairs of openings. *4* is the anchor piece, bent into a U-shaped form, with its arms passing through the openings in the tie strip, and being so constructed as to provide for the depth of insertion of the arm, leaving a portion below the tie member and forming a gage or leg; the free ends of the arm being bent around the reinforcing member. *5*, Fig. 6, is the shoulder upon which the tie strip rests.

[1] Appellant offered no evidence upon the trial, and appellees urge that therefore the patent must be given the standing of a pioneer. The contention hardly merits attention. If tenable, then a motion to dismiss a bill in equity, based upon the invalidity of the patent, would never be sustained.

[2] Courts take judicial notice of certain well and commonly known facts in patent cases, as well as in other fields of litigation. True, the judicial knowledge of the prior art in any patent suit must fall far short of the exact information obtainable on the trial on this phase of the litigation; but it would be erroneous to assume no judicial knowledge exists. In the present case, for example, we could hardly be totally ignorant of an art that was well developed in the days of Cæsar. Cement structures and the reinforcement thereof were matters of common knowledge long before Taxis applied for this patent. Reinforcement of concrete is almost as old as the use of this building material. The claims, then, must be read upon such a background, rather than upon the more exact and complete state of the art, which the appellant could, in the trial court, have supplied, but which it did not show.

[3] With such a background, what of the claims? They obviously relate to a very limited field—support for reinforcement in concrete.

Most favorably viewed, they disclose but little more than mechanical skill. Further, a concession of novelty and validity to both claims does not necessarily carry with it any admission as to their scope. Both claims are very narrow and they must be so construed in determining infringement.

Neither claim reads literally upon the alleged infringing device. The so-called "anchor pieces" are not provided with arms that pass through the openings of the tie strip. Neither are they U-shaped. Nor is the tie member provided with bars and openings, through which the arms of the anchor piece pass.

Among the asserted advantages of this invention, appellees claim that the two pieces "can be packed closely together for freight shipment thereby saving space and consequently freight charges"; that "the structural features of the pieces are such that the reinforcing bars can be quickly and accurately assembled"; that "the pieces thereof can be and are punched out of flat material—that is, sheet metal—and can be rapidly locked together." In view of these advantages it can hardly be asserted that the "openings in the tie member" and the "placing of the arms in such openings" are unimportant elements or an unimportant modification to an element in either claim. Their absence in appellant's structure avoids infringement.

[4] It has been suggested, however, that a certain agreement made between the parties prior to this suit and prior to the construction of any of the alleged infringing devices materially limits appellant's rights. The testimony showed that appellant had made and sold a certain form of bar support and spacer which appellees claimed infringed the patent in suit. To avoid litigation appellant paid a certain sum as damages and agreed to discontinue "the manufacture and sale of the above specified forms of bar supports and spacers." It also agreed not to infringe the patent in suit. Appellees now contend that, because the first structure was thus admitted by appellant to be an infringement, and it appearing that the second structure is the mechanical equivalent of the first, infringement by appellant's second structure is shown. This position is unsound. The claims of the patent must determine appellees' rights. An admission made in another suit, or threatened suit, respecting a different device, cannot broaden the scope of such claims. To compare appellant's present with its former device to determine equivalency would be to substitute for the elements of the claim as written the mechanical equivalents of appellant's first structure. It would be giving patentee a double or two-step test for determining equivalency.

The decree is reversed, with the direction to dismiss the bill for want of equity.